# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TRACI BRANNON, LINDSEY RIZZO, and JAMIE HERR, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.  2:17-cv-02497-DDC-GLR ) |
| EXPRESS SCRIPTS HOLDING COMPANY, EXPRESS SCRIPTS, INC., UNITEDHEALTH GROUP, INC., OPTUMRX, INC., and PRIME THERAPEUTICS, LLC, | ) ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS PRIME THERAPEUTICS LLC, EXPRESS SCRIPTS HOLDING COMPANY, AND EXPRESS SCRIPTS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

## INTRODUCTION

Plaintiffs' complaint mirrors a class action that was filed in the District of Minnesota three months before Plaintiffs filed this action.  *See Klein v. Prime Therapeutics, LLC*, No. 17-cv-01884 (D. Minn.).  This second-filed action presents the same core claim—that pharmacy benefit managers ("PBMs") caused participants in ERISA health plans to pay more out of pocket for a specific prescription drug, EpiPen.  It copies the same theory—that PBMs caused this harm by soliciting rebates for EpiPen from EpiPen manufacturer, Mylan.  And it asserts the same ERISA causes of action against substantially the same defendants, on behalf of a nearly identical putative class.

Not only does this action involve nearly the same allegations and claims as the Minnesota action, it also lacks any connection to Kansas.  None of the named Plaintiffs or Defendants are Kansas residents, and none of Plaintiffs' alleged EpiPen purchases occurred in Kansas.  This case has no connection to Kansas whatsoever.

Accordingly, this action should be transferred to Minnesota, where the first-filed action is pending.  The Court should not be deterred from transferring on account of maneuvering by Plaintiffs' counsel in the multidistrict litigation ("MDL") against Mylan. *See In re EpiPen*, No. 17-md-2785 (D. Kan.).  Plaintiffs' counsel has angled to "leapfrog" *Klein* by noticing this action as "related" to the MDL and then prompting the JPML to issue a Conditional Transfer Order ("CTO") with respect to *Klein*.  That CTO, however, has no effect pending resolution of objections filed by Prime Therapeutics LLC ("Prime") and Express Scripts, Inc. ("ESI").  Moreover, this action (and *Klein*) presents

discrete ERISA claims that should not be consolidated with the antitrust-based MDL. Minnesota is the logical forum for adjudicating the ERISA claims against the PBMs.

As explained below, transfer to the District of Minnesota is appropriate pursuant to either the first-filed rule or the federal transfer statute, 28 U.S.C. § 1404(a).[1]

## **BACKGROUND**

### A.      The Earlier-Filed Minnesota Action ("*Klein*")

In June 2017, plaintiffs filed a putative class action against Prime, Express Scripts Holding Co., ESI, and CVS Health Corp. ("CVS") in Minnesota (the "*Klein* plaintiffs"). Ex. 1, Compl., *Klein*, No. 17-cv-01884, Dkt. 1.   The *Klein* plaintiffs allege that three PBMs—Prime, ESI, and CVS—were fiduciaries of their ERISA health plans and breached duties owed to them under ERISA.  *Id.* ¶ 5.  The PBMs purportedly did so by negotiating rebates from Mylan and keeping a portion for themselves in exchange for placement of EpiPen on plan formularies.  *Id.*   The *Klein* plaintiffs claim this rebate negotiation caused the list price of EpiPen to increase, thereby increasing the amount they had to pay out of pocket for EpiPen prescriptions.  *Id.*  ¶¶ 135.

Based on these allegations, the *Klein* plaintiffs assert several ERISA claims, including breach of fiduciary duty under ERISA § 404(a); a "prohibited transaction" claim under ERISA § 406(b); and a claim for "knowing participation" in ERISA violations.  *Id.* ¶¶ 133-46.  *The Klein* plaintiffs bring all of these claims on behalf of a

---

[1] Prime and ESI expressly preserve all available defenses, including, without limitation, defenses available under Rule 12 of the Federal Rules of Civil Procedure, which will be the subject of a subsequent motion.

putative class of participants in ERISA health plans under ERISA § 502(a)(3), which authorizes only "appropriate equitable relief."  *Id.* ¶¶ 138, 143.

On August 4, 2017, each of the *Klein* defendants (Prime, ESI, and CVS) moved to dismiss the complaint for (i) lack of constitutional standing and (ii) failure to state a claim.[2]  Rather than oppose these motions, Plaintiffs indicated they will amend their complaint by September 27, 2017.  *See Klein*, No. 17-cv-01884, Dkt. 92.

### B.    The Present Duplicative Action ("*Brannon*")

Plaintiffs filed this class action lawsuit on August 29, 2017, three months after the *Klein* complaint was filed.  This action mimics *Klein* in almost every respect.

First, it parrots *Klein*'s basic theory of liability—that PBMs "artificially inflate the cost of the EpiPen in order to facilitate Mylan's payment of so-called 'rebates' . . . in exchange for favorable formulary placement."  *Brannon* Compl. ¶ 2.  That is nearly verbatim to *Klein*'s theory that PBMs "caused EpiPen benchmark price increases through solicitation and receipt of increasing rebates from Mylan for EpiPen . . . in exchange for placement of EpiPen on Defendants' and their clients' formularies."  *Klein* Compl. ¶ 128.

Second, this action names only PBMs and their parent companies—just as in *Klein*.  In fact, both actions identify ESI, CVS, OptumRx ("Optum"), and Prime as the largest PBMs, and both actions name three of those four entities as defendants.  *See*

---

[2] *See Klein*, No. 17-cv-01884, Dkt. 54 (ESI's Memorandum in Support of Motion to Dismiss), Dkt. 62 (Prime's Memorandum in Support of Motion to Dismiss), Dkt. 82 (CVS's Memorandum in Support of Motion to Dismiss).

*Brannon* Compl. ¶¶ 7-15, 64; *Klein* Compl. ¶¶ 11-13, 26.[3]  The only negligible difference

is that, in this action, Plaintiffs sued Optum instead of CVS.  *See id.*

Third, as in *Klein*, this action asserts only ERISA causes of action.  Both actions

assert: (1) a fiduciary breach claim under ERISA § 404(a),[4] (2) a "prohibited transaction"

claim under ERISA § 406(b),[5] and (3) a "knowing participation" claim.[6]

Fourth, both actions describe nearly identical putative classes:

- *Brannon*: "All individuals residing in the United States and its territories who are or were enrolled in an ERISA-covered health benefit plan or health insurance plan for which one or more of the PBM Defendants administers or manages pharmacy benefits, who purchased an EpiPen epinephrine injector pursuant to such plans or policies and were required to pay all or a portion of the purchase price based on an inflated list price." *Brannon* Compl. ¶ 138.

- *Klein*: "All persons residing in the United States and its territories who are participants in, or beneficiaries of, health insurance plans governed by ERISA, for which Defendants administered pharmacy benefits, and who paid any portion of the purchase price for EpiPen or EpiPen Jr. calculated by reference to a benchmark price . . . as required by the terms of their health insurance and/or prescription drug benefit plans." *Klein* Compl. ¶ 109.

Fifth, this action alleges the same harm and requests the same relief as *Klein*.

Specifically, in both class actions, plaintiffs claim an injury of paying more out of pocket

for EpiPen (*Brannon* Compl. ¶ 95; *Klein* Compl. ¶ 79), and both actions seek only the

"equitable relief" available under ERISA § 502(a)(3).  *Brannon* Compl. ¶¶ 161, 170, 177,

186; *Klein* Compl. ¶¶ 138, 143.

---

[3] While both actions name ESI and Prime, this action also names Optum, and *Klein* also names CVS.  *See Brannon* Compl. ¶¶ 7-15; *Klein* Compl. ¶¶ 11-13.

[4] *Brannon* Compl. ¶¶ 162-170; *Klein* Compl. ¶¶ 135.

[5] *Brannon* Compl. ¶¶ 152-161; *Klein* Compl. ¶¶ 142.

[6] *Brannon* Compl. ¶¶ 178-186; *Klein* Compl. ¶¶ 138, 144.

**ARGUMENT**

This Court has broad authority to transfer this case to the District of Minnesota and should do so to promote judicial efficiency given that the earlier-filed *Klein* action involves the same basic dispute. Courts in this District routinely transfer later-filed actions under the "first-filed" rule. *See, e.g.*, *Barbour Grp. v. Encon Int'l, Inc.*, No. 12-cv-2557, 2013 U.S. Dist. LEXIS 101156, at *20-22 (D. Kan. July 18, 2013) (transferring case under the first-filed rule); *Graphic Tech., Inc. v. McDonald's Operators Ass'n of S. Cal.*, No. 00-2349, 2000 U.S. Dist. LEXIS 23566, at *5 (D. Kan. Dec. 21, 2000) (same).

In the alternative, transfer is also appropriate under the federal transfer statute, 28 U.S.C. § 1404(a). *See Pac. Oil & Gas, LLC v. Chesapeake Energy Corp.*, No. 16-cv-2498, 2017 U.S. Dist. LEXIS 59602, at *18-22 (D. Kan. Apr. 18, 2017) (transferring under § 1404(a) to a district with a pending case that "mirrors the litigation at issue"); *Accessible Techs., Inc. v. Vortech Eng'g, Inc.*, No. 99-2165, 1999 U.S. Dist. LEXIS 12023, at *5-11 (D. Kan. July 15, 1999) (same).

## I.   THIS COURT SHOULD TRANSFER THIS ACTION UNDER THE FIRST-FILED RULE

When actions involving similar parties and similar issues are pending in different federal courts, as is the case here, the first-filed case has priority. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982); *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965). This "first-filed" rule rests on principles of comity and a desire "to avoid duplicative litigation." *Ed Tobergte Assocs. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197, 1198 (D. Kan. 1999).

"If the rule applies, a court may dismiss, transfer, or stay the second-filed case."[7]
*Rezac Livestock Comm'n Co. v. Dinsdale Bros.*, No. 15-cv-04958, 2016 U.S. Dist.
LEXIS 128115, at *14 (D. Kan. Sep. 16, 2016) (Crabtree, J.).   Transfer of the later-filed
case is the preferred course where, as here, it is uncontested that the first-filed court has
jurisdiction.  *See, e.g.*, *Graphic Tech.*, 2000 U.S. Dist. LEXIS 23566, at *4-5.

In applying the first-filed rule, courts consider three factors: (1) "the chronology of
actions"; (2) "the similarity of the parties involved"; and (3) "the similarity of the issues
at stake." *Wallace*, 679 F. Supp. 2d at 1296.   All three factors support transfer here.

### A.      The First-Filed Case Was Filed In The District of Minnesota

There is no dispute about the chronology of the two actions.  The *Klein* complaint
was filed on June 2, 2017, more than twelve weeks before this action was filed.   *See*
*Brannon* Compl. at 63; *Klein* Compl. at 53.   Not only was *Klein* filed first, it also has
progressed further.   The defendants in *Klein* filed motions to dismiss on August 4, the
plaintiffs have indicated that they will amend their complaint by September 27, and the
case is otherwise proceeding apace.   *See supra* at 3.

### B.      The Parties Are Substantially Similar

This action involves substantially similar parties as *Klein*, which is all that is
necessary for the first-filed rule to apply.   *See Rezac Livestock*, 2016 U.S. Dist. LEXIS

---

[7] This motion to transfer is properly before this Court, the second-filed court.   *See*
*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287,
1297 (D. Kan. 2010) ("[T]here are numerous decisions by second-filed courts applying
the first-to-file rule in cases involving class actions.").   While the District of Minnesota
also could decide the motion, Prime and ESI are mindful that this Court is presiding over
the MDL that Plaintiffs are attempting to use as a basis for consolidation, and already has
pending before it the oppositions to that attempt.   *See Brannon* Dkts. 9, 22, 27, 28.

128115, at *15.   The "presence of one additional party is not enough to prohibit application of the first-to-file rule."   *Id.*; *see also Graphic Tech.*, 2000 U.S. Dist. LEXIS 23566, at *4-5 (invoking first-filed rule despite "additional party").

Here, both actions involve three of the four largest PBMs, and both actions repeatedly mention all four PBMs.   *See, e.g.*, *Brannon* Compl. ¶¶ 7-15, 64, 79; *Klein* Compl. ¶¶ 11-13, 45-57.   Moreover, all of the defendants—in both this action and *Klein*—are either PBMs or their parent companies.   That is more than sufficient similarity for purposes of the first-filed rule.   *Cf. Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1169-70 (N.D. Okla. 2010).

With regard to the plaintiffs, in the class action context, courts in the Tenth Circuit examine whether the classes in the different actions are substantially similar.   *See, e.g.*, *Letbetter v. Local 514, Transp. Workers Union of Am.*, No. 14-cv-00125, 2014 U.S. Dist. LEXIS 123949, at *15-16 (N.D. Okla. Sep. 5, 2014).   Here, the plaintiffs in each action purport to seek relief on behalf of a putative nationwide class of members of various health plans to which defendant PBMs provide services, so the classes substantially overlap.   *See supra* at 4-5 (setting forth proposed class definitions).

And while the two proposed classes are not identical due to the difference in one defendant PBM (Optum vs. CVS), the classes unquestionably overlap as to thousands of putative members, which is sufficient for purposes of applying the first-filed rule.   *See, e.g.*, *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1296 (N.D. Cal. 2013) ("Courts have held that proposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals.").

### C.     The Issues Are Substantially Similar

The issues in this action are also substantially similar to the issues in *Klein*. Claims need only be substantially similar, not identical, for the first-filed rule to apply. *See Wallace*, 679 F. Supp. 2d at 1298 ("the first-to-file rule does not require identity of claims"); *Ed Tobergte*, 83 F. Supp. 2d at 1198 (same).  Here, the crux of both complaints is the allegation that the defendant PBMs improperly negotiated rebates from Mylan, thereby causing an increase in EpiPen's list price, and kept a portion of those rebates in exchange for placement of EpiPen on plan formularies.  *See supra* at 2-4.

Further, both actions involve only ERISA claims: a breach of fiduciary duty claim, a prohibited transaction claim, and a claim for "knowing participation" in ERISA violations.  *See supra* at 3, 4.  Both actions allege the same harm—that participants in ERISA health plans paid more out of pocket in the form of deductibles and coinsurance for EpiPen prescriptions.  And both seek the equitable relief available under ERISA § 502(a)(3).  In sum, Plaintiffs in this action object to the same conduct, raise the same claims, complain of the same harm, and seek the same relief as the *Klein* plaintiffs.

To the extent there are differences between the two actions, they are minimal and cannot defeat application of the first-filed rule.  For example, although this action raises an additional "discrimination" claim under ERISA § 702, there is still no question that the two actions "substantial[ly] overlap."  *Wallace*, 679 F. Supp. 2d at 1298 (invoking first-filed rule even though later-filed case involved different claims).

### D.     No Special Circumstances Justify Disregarding The First-Filed Rule

"The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply."  *Keymark Enters., Ltd. v. Eagle Metal Prods.*, No. 08-cv-00662, 2008 U.S. Dist. LEXIS 87843, at *7 (D. Colo. Oct. 30, 2008) (quoting *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber*, 920 F.2d 487, 488-89 (8th Cir. 1990)).  Such compelling circumstances include "bad faith, anticipatory filing, and forum shopping." *Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc.*, No. 06-2551, 2007 U.S. Dist. LEXIS 60867, at *7 (D. Kan. Aug. 17, 2007).  There can be no claim that the defendant PBMs engaged in such conduct.

Nor can Plaintiffs claim that the pending MDL is a "compelling circumstance." Although the JPML has, at Plaintiffs' initiative, issued a CTO transferring *Klein* to the MDL, the law is clear that no significance attaches to that order until the JPML rules on the parties' outstanding objections.  *See In re Multidistrict Commodity Credit Corp. Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970).  In the meantime, nearly every party in *Klein*—as well as parties in the MDL—has opposed the CTO,[8] which is a factor that weighs heavily against transfer to the MDL.  *See In re "Lite Beer" Trademark Litig.*, 437 F. Supp. 754, 755-56 (J.P.M.L. 1977) ("nearly unanimous opposition" to MDL transfer is a "persuasive factor" weighing against transfer).  There is, therefore, no basis to expect that *Klein* will be venued anywhere other than Minnesota.

In fact, "compelling circumstances" dictate that this action *should* be transferred to

---

[8] MDL No. 2785, Dkt. 74 (*Klein* Pls.'s Opp'n); Dkt. 76 (ESI's Opp'n); Dkt. 79 (Prime Opp'n); Dkt. 79 (Mylan's Opp'n).

Minnesota.  Although Plaintiffs' counsel could have directly asked the JPML to transfer *Klein* to the MDL earlier this summer, they did not.  Instead, they waited until shortly *after* the JPML created the MDL and now, through a series of filings, are maneuvering to "leapfrog" *Klein*.  Specifically, the day after filing this action on August 29,[9] Plaintiffs' counsel simultaneously (i) noticed their complaint as "related" to the MDL and then (ii) noticed *Klein* as a "tag-along" case that should be consolidated in the MDL.  *See Brannon*, Dkt. 4 (Aug. 30, 2017); MDL No. 2785, Dkt. 71 (Aug. 30, 2017).[10]  Such maneuvering cannot override the first-filed rule.  *See Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240-41 (9th Cir. 2015) ("first-to-file rule" should be applied to "avoid[] awarding such gamesmanship").

The fact that Plaintiffs hope to succeed in "tagging" *Klein* does not affect application of the first-filed rule.[11]  For example, the court in *Justin v. Metropolitan Life Insurance Co.* rejected a similar argument and explained: "Plaintiffs' counsel's conviction that this matter should be consolidated with" an MDL "will not serve to

---

[9] Before filing this lawsuit on August 29, Plaintiff Brannon filed a very similar complaint on August 11 alleging ERISA claims against Prime, as well as RICO claims against Prime, ESI, CVS, and Optum.  *See Brannon v. CVS Health Corp. et al.*, No. 2:17-cv-02464, Dkt. No. 1 (D. Kan. Aug. 11, 2017).  Shortly thereafter, she dismissed her complaint (*see id.* Dkt. 4) and refiled this action, adding two plaintiffs who were allegedly participants in ERISA plans to which ESI and Optum provided services, and dropping her RICO claims against all of the defendants.

[10] Plaintiffs for Brannon and the MDL plaintiffs identified *Brannon* to the MDL on the basis of their designation on the Civil Cover Sheet, but under this Court's local rules, a case is not deemed related to the MDL until after the Court rules on a party's Notice of Related Action.  *See* Local Rule 23-A.

[11] *See Brannon* Pls.' Omnibus Reply in Supp. of Consolidation, Dkt. 34 at 5 (claiming *Klein* is a "textbook tag-along").

preempt the 'first to file' rule."  2000 U.S. Dist. LEXIS 17257, at *6-7 (E.D. La. Nov. 17, 2000) (transferring to New York, despite ongoing MDL).  Here, too, Plaintiffs' hope of consolidating *Klein* in the MDL should not deter the court from transferring this case to Minnesota, particularly given that their tag notice was filed improperly[12] and given that *Klein* presents discrete ERISA issues unrelated to the MDL.

In sum, this Court should apply the first-filed rule out of comity to the ongoing *Klein* action.  The anticipated motions to dismiss in *Klein* likely will not be fully submitted until later this fall, and this action can be coordinated with *Klein* once it is transferred there.  And transfer would not interfere with the parties' other proceedings. The briefing on Plaintiffs' Notice of Related Action has been fully submitted, and this Court's denial of the motion to transfer to the MDL would remove any obstacle to this litigation moving to Minnesota.  Finally, for the reasons stated above, the *Klein* CTO provides no basis for keeping this action in Kansas.[13]  In sum, Minnesota is the logical and sensible venue for adjudicating the ERISA claims against the PBMs, and notwithstanding Plaintiffs' efforts to create confusion by their strategic filings, the *Klein* and *Brannon* actions can be consolidated there in short order.

---

[12] Under JMPL Rule 7.1(a), a party may file a notice of a "tag-along action" only for an action "in which that party is also named or in which that counsel appears."  The *Brannon* Plaintiffs are not named in *Klein*, nor does their counsel appear in *Klein*.

[13] To the extent relevant, however, briefing on the Motion to Vacate the CTO will be complete by October 13.

## II.   TRANSFER IS ALSO WARRANTED UNDER 28 U.S.C. § 1404(A)

Transfer to the District of Minnesota is also appropriate under 28 U.S.C. § 1404(a).[14]  Under § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice."  The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  District courts have broad discretion to decide transfer motions, and should do so "according to an individualized, case-by-case consideration of convenience and fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quotation omitted).

To transfer under § 1404(a), the Court must make two findings: (1) the transferee district court is one where the action might have been brought, and (2) the conveniences of the parties and witnesses and the interest of justice favor transfer.  *Chrysler Credit*, 928 F.2d at 1515.  Here, there is no question that this case could have been brought in the District of Minnesota, and indeed, the virtually identical *Klein* action has already been brought there.  Defendants are subject to personal jurisdiction in Minnesota and venue is proper in Minnesota.[15]

---

[14] *See Rezac Livestock*, 2016 U.S. Dist. LEXIS 128115, at *20 (first-filed rule and § 1404(a) provide alternate bases for transfer); *Emplrs. Reinsurance Corp. v. MSK Ins., Ltd.*, No. 01-2608, 2003 U.S. Dist. LEXIS 8207, at *19 (D. Kan. Mar. 31, 2003) (same).

[15] In an ERISA action, venue is proper in a district "where a defendant resides," 29 U.S.C. § 1132(e)(2), and here, two of the named defendants—UnitedHealth and Prime— both reside in Minnesota.  *See Brannon* Compl. ¶¶ 10, 13.

Under the second prong of the § 1404(a) analysis, the Court considers at least three factors: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interest of justice. But whether a transfer is in the interest of justice "may be determinative." *Thompson v. Titus Transp., LP.*, No. 11-cv-1338, 2012 U.S. Dist. LEXIS 168730, at *30 (D. Kan. Nov. 27, 2012) (quoting *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010)); *see also* Wright & Miller, 15 Federal Practice and Procedure § 3854 (4th ed.) ("Indeed, a number of federal courts have considered this factor decisive.").

### A.    The Interest Of Justice Weighs Heavily In Favor Of Transfer

Transferring this case to the District of Minnesota would conserve judicial resources in the interest of justice. In assessing this factor, courts consider whether there is "related litigation in another forum" and whether consolidation is likely in that forum. *See Pac. Oil & Gas*, 2017 U.S. Dist. LEXIS 59602, at *18-22 (granting transfer due to likely consolidation in another district). As the Supreme Court has instructed:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.

*Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). That is why courts in this District regularly transfer cases to a venue where there is related litigation.[16]

---

[16] *See, e.g.*, *Pac. Oil & Gas*, 2017 U.S. Dist. LEXIS 59602, at *26 (transferring under § 1404(a) due to "nearly identical" case in transferee district); *Boilermakers Nat'l Health & Welfare Tr. v. Steele*, No. 09-2329, 2010 U.S. Dist. LEXIS 54586, at *21 (D. Kan. June 2, 2010) (same due to "nearly identical case"); *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, No. 08-2556, 2009 U.S. Dist. LEXIS 7319, at *5 (D. Kan. Feb. 2,

Here, there is clearly "related" litigation in Minnesota.  Given this action's overlapping claims and allegations with *Klein*, there will be overlapping arguments, briefs, and rulings at every stage in the litigation, which is a waste of judicial resources. Moreover, litigating in two federal courts could lead to inconsistent rulings. The inconvenience to Defendants of having to litigate the same issues in multiple courts and the interest of judicial economy weigh in favor of transfer.  *See Accessible Techs.*, 1999 U.S. Dist. LEXIS 12023, at *6 ("The court concludes that this similarity of the multi-district claims substantially weighs in favor of granting transfer of the matter.").

Moreover, consolidation of the two actions is feasible, and indeed anticipated, which also weighs in favor of transfer.  "The necessity for an orderly administration of the courts does at times require the consolidation of [class] actions . . . where the same issues are presented[,] where the plaintiffs are apparently members of the class there proceeding against the same or some of the same defendants.  There is no right to maintain separate actions in these circumstances."  *Miller v. Board of Ed.*, 667 F.2d 946, 949 (10th Cir. 1982).

---

2009) (same due to "nearly identical matter"); *Waldmer v. SER Sols., Inc.*, No. 05-2098, 2006 U.S. Dist. LEXIS 4934, at *18 (D. Kan. Feb. 3, 2006) (same due to case with "related issues and allegations"); *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1261 (D. Kan. 2004) (same due to "closely related" case); *Emplrs. Reinsurance*, 2003 U.S. Dist. LEXIS 8207, at *27 (same due to "nearly identical case"); *Accessible Techs.*, 1999 U.S. Dist. LEXIS 12023, at *10-11 (same due to "closely related" case); *Creek v. Dakotah, Inc.*, 24 F. Supp. 2d 1215, 1217 (D. Kan. 1998) (same due to "nearly identical case"); *MIR v. CIVILETTI*, No. 81-4007, 1981 U.S. Dist. LEXIS 18607, at *30 (D. Kan. May 12, 1981) (same due to "similar litigation").

Further, for the reasons stated above, the MDL is not "related" litigation pending in this District, nor should the MDL interfere with the transfer of this case to the District of Minnesota. *See supra* at 9-12.

### B. Plaintiffs' Choice Of Forum Is Not Entitled To Deference

Plaintiffs' chosen forum is not entitled to deference for three reasons.

First, none of the named Plaintiffs are Kansas residents. Instead, they are residents of New Jersey, Connecticut, and Oklahoma. *Brannon* Compl. ¶¶ 1, 3, 5. Because the District of Kansas is not their home turf, Plaintiffs' selection of forum is "largely inapplicable" in the § 1404(a) analysis. *McIntosh v. City of Wichita*, No. 14-2402, 2015 U.S. Dist. LEXIS 48681, at *3 (D. Kan. Apr. 14, 2015) (Crabtree, J.); *see Benson v. Hawker Beechcraft Corp.*, No. 07-2171, 2007 U.S. Dist. LEXIS 46717, at *6 (D. Kan. June 26, 2007) ("[W]hen the plaintiff does not reside in the chosen forum, the rationale for allowing the plaintiff to dictate the forum evaporates.").[17]

Second, the Complaint alleges *no* connection to Kansas whatsoever, and, as the Tenth Circuit instructs, a court should "accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Bartile Roofs*, 618 F.3d at 1168 (quotation omitted). Here, none of Plaintiffs or Defendants are based in Kansas, and there is no allegation that Plaintiffs purchased a single EpiPen in Kansas. *See Brannon* Compl. ¶¶ 7-

---

[17] *See also Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) ("The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district."); *cf. Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (where there are hundreds of potential plaintiffs, claim of any one plaintiff that forum is appropriate is considerably weakened).

13.   All of the claims are based on ERISA; none are based on Kansas state law.[18] Because this dispute has no connection to Kansas, Plaintiffs' choice of forum should likewise receive no deference.  *See, e.g.*, *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 699 (D. Kan. 1993).

Third, because Plaintiffs purport to bring this action on behalf of a *nationwide* class, the relevance of their chosen forum "is diminished and factors other than plaintiff's choice must necessarily take on increased significance."  *Schecher*, 317 F. Supp. 2d at 1263; *see also MIR*, 1981 U.S. Dist. LEXIS 18607, at *24-25 (noting relevance of plaintiffs' forum choice "is diminished in a class action").

The only apparent reason for Plaintiffs' choice of forum is that their counsel is engaged in the Mylan MDL in this District.  But as discussed above, the claims asserted in this action and *Klein* bear no relation to the claims asserted in the MDL, and the better course is to transfer this case to Minnesota.  *See Wyoming v. United States DOI*, No. 07-cv-319, 2008 U.S. Dist. LEXIS 126096, at *11 (D. Wyo. May 14, 2008) ("§ 1404(a) is designed to remedy the evils of forum shopping").

Finally, Plaintiffs' forum selection is not due deference simply because this is an ERISA action.  Although the forum choice of ERISA plaintiffs is sometimes afforded deference, any such deference vanishes where, as here, plaintiffs bring a nationwide class action with no connection to the forum.  *See, e.g.*, *Gipson v. Wells Fargo & Co.*, 563 F.

---

[18] *See Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1210 (D. Kan. 2016) (Crabtree, J.) ("Either the federal court in Kansas or California could decide the federal claims asserted here.").

Supp. 2d 149, 158 (D.D.C. 2008); *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 30 (D.D.C. 2013).  Indeed, courts in this District and Circuit regularly transfer ERISA actions.  *See, e.g., Boilermakers Nat'l Health & Welfare Tr. v. Steele*, No. 09-2329, 2010 U.S. Dist. LEXIS 54586, at *20-21 (D. Kan. June 2, 2010) (granting § 1404(a) motion and transferring ERISA case to Pennsylvania).[19]

### C.    Convenience of the Parties and Witnesses Support Transfer

While the interest of justice alone warrants transfer, other factors further support that conclusion.   Two of the named defendants (UnitedHealth and Prime) are headquartered in Minnesota.   *Brannon* Compl. ¶¶ 10, 13.   Given the headquarters in Minnesota, many potential witnesses are located in Minnesota; others will be in various locations across the country, including California and St. Louis.   Moreover, Defendants are already litigating in Minnesota, and the same witnesses and evidence are likely to be relevant to both cases.   Accordingly, the convenience of the parties and the witnesses support transfer.  *See Heartland Payment Sys. v. VeriFone Isr., Ltd.*, No. 10-0654, 2010 U.S. Dist. LEXIS 41226, at *13 (N.D. Cal. Apr. 22, 2010) (transferring under § 1404 because "appearing in a single district [was] more convenient than appearing in two different district on opposite ends of the country").

---

[19] *See also, e.g., Danny P. v. Catholic Health Initiatives*, No. 1:14-cv-00022, 2015 U.S. Dist. LEXIS 4613, at *10 (D. Utah Jan. 13, 2015) (granting § 1404 motion to transfer ERISA case); *David L. v. McGraw-Hill Cos.*, No. 1:13-cv-00176, 2014 U.S. Dist. LEXIS 56664, at *6 (D. Utah Apr. 23, 2014) (same); *Island View Residential Treatment Ctr. v. Permanente*, No. 1:09-cv-3, 2009 U.S. Dist. LEXIS 74400, at *10 (D. Utah Aug. 21, 2009) (same); *Jon N. v. Blue Cross Blue Shield of Mass., Inc.*, No. 1:07-cv-137, 2008 U.S. Dist. LEXIS 35464, at *10 (D. Utah Apr. 29, 2008) (same); *Cargill Inc. v. Prudential Ins., Co. of Am.*, 920 F. Supp. 144, 147-48 (D. Colo. 1996) (same).

Furthermore, Minnesota is no less convenient than Kansas for Plaintiffs (who are residents of neither) or the class. *See Jovel v. I-Health*, No. 12-05526, 2012 U.S. Dist. LEXIS 161281, at *14 (C.D. Cal. Nov. 8, 2012) ("[A] nationwide class action is by its nature an action that covers the nation, so it is to be expected that some class members would be required to travel no matter the ultimate forum.").

On balance, transfer to the District of Minnesota is appropriate under § 1404(a).[20] The Court should not be deterred from transferring this case to Minnesota on account of Plaintiffs' counsels' jockeying in the MDL on matters unrelated to the PBM actions.

## CONCLUSION

For the reasons set forth above, this Court should transfer the case to the District of Minnesota for coordination and consolidation with the pending *Klein* action, under the first-to-file rule or alternatively, § 1404(a). Transfer of this action would further the interest of justice and comity and would ease the burden on the parties and witnesses.

---

[20] For this reason, and as discussed more fully in the Opp'n to Pls.' Notice of Related Action, this action should not be transferred to the MDL under 28 U.S.C. § 1407. *See In re Gaiam, Inc.*, 672 F. Supp. 2d 1373, 1374-75 (J.P.M.L. 2010) ("Where there are only a limited number of actions and the involved parties are amenable to Section 1404 transfer, such transfer is generally preferable to centralization under Section 1407.").

Dated:  September 15, 2017

BERKOWITZ OLIVER LLP

By: ___ /s/ David F. Oliver _____
    David F. Oliver     KS Bar #70731
    Christina M. Wahl   KS Bar #23406
    Carson M. Hinderks   KS Bar #25079
    2600 Grand Blvd., Suite 1200
    Kansas City, MO  64108
    (816) 561-7007 (Phone)
    (816) 561-1888 (Fax)
    email: doliver@berkowitzoliver.com
        cwahl@berkowitzoliver.com
        chinderks@berkowitzoliver.com

and

DORSEY & WHITNEY LLP

    Stephen P. Lucke (*pro hac vice*)
    Jaime Stilson (*pro hac vice*)
    Nicholas J. Bullard (*pro hac vice*)
    Suite 1500, 50 South Sixth Street
    Minneapolis, MN 55402-1498
    Telephone:  (612) 340-2600
    Facsimile:  (612) 340-2868
    Email: lucke.steve@dorsey.com
        stilson.jaime@dorsey.com
        bullard.nick@dorsey.com

*Attorneys for Prime Therapeutics LLC*

GERMAN MAY PC

By: ___ /s/ William D. Beil _____
    William D. Beil    KS Bar #18072
    1201 Walnut St., Suite 2000
    Kansas City, MO  64106
    (816) 471-7700 (Phone)
    (816) 471-2221 (Fax)
    email: billb@germanmay.com

and

20

QUINN EMANUAL URQUHART &
SULLIVAN LLP

Michael Lyle (*pro hac vice*)
Jonathan Cooper (*pro hac vice*)
777 Sixth Street NW, 11th Floor
Washington, D.C. 20001
(202) 538-8000 (Phone)
(202) 538-8100 (Fax)
email: mikelye@quinnemanuel.com
       jonathancooper@quinnemanual.com

Andrew S. Corkhill (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (Phone)
(212) 849-7100 (Fax)
email: andrewcorkhill@quinnemanuel.com

and

STEPTOE & JOHNSON LLP

Paul J. Ondrasik, Jr. (*pro hac vice*)
Eric G. Serron (*pro hac vice*)
1330 Connecticut Avenue NW
Washington, D.C. 20036
(202) 429-3000 (Phone)
email: pondrasik@steptoe.com
       eserron@steptoe.com

*Attorneys for Express Scripts Holding Co. and
Express Scripts, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2017, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_/s/ David F. Oliver_
***Attorney for Defendant Prime Therapeutics LLC***
