## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TRACI BRANNON, LINDSEY RIZZO, AND JAMIE HERR, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY, et al.,<br><br>        Defendants. | Case No. 17-2497-DDC-TJJ |

## MEMORANDUM AND ORDER

On August 29, 2017, plaintiffs Traci Brannon, Lindsey Rizzo, and Jamie Herr, individually and on behalf of all others similarly situated, filed a Class Action Complaint, against five defendants who own or operate pharmacy benefit management companies. Doc. 1. Plaintiffs are enrolled in employer-provided welfare benefit health plans through one of the defendants. They allege that defendants contracted on behalf of health plans and insurers with Mylan N.V., Mylan Specialty L.P., and/or Mylan Pharmaceuticals, Inc. (collectively, "Mylan") to purchase EpiPen epinephrine injectors. And, in doing so, plaintiffs assert that defendants engaged in extortion and deceptive conduct, with the purpose of extracting unlawful portions of rebates and other payments from Mylan. Plaintiffs seek to represent a class of individuals who were enrolled in one of defendant's plans, who purchased an EpiPen epinephrine injector under such a plan, and who were required to pay all or a portion of the purchase price based on an inflated list price for the EpiPen.

Defendants Prime Therapeutics, LLC, Express Scripts Holding Company, and Express Scripts, Inc. (collectively "the Moving Defendants") have filed a Motion to Transfer Venue. Doc. 38. The Moving Defendants ask the court to transfer this case to the District of Minnesota under the first-to-file rule. Alternatively, the Moving Defendants ask the court to transfer the case under 28 U.S.C. § 1404(a). For reasons explained below, the court grants the Motion to Transfer Venue, and the court transfers this case to the District of Minnesota.[1]

## I. Factual Background

Plaintiffs have filed a Class Action Complaint against five defendants who own or operate pharmacy benefit management companies ("the PBM defendants"). The five PBM defendants are: (1) Express Scripts Holding Company; (2) Express Scripts, Inc.; (3) UnitedHealth Group, Inc.; (4) OptumRx, Inc.; and (5) Prime Therapeutics, LLC. Plaintiffs are enrolled in employer-provided welfare benefit health plans through one of the defendants. The Employee Retirement Income Security Act of 1974 ("ERISA") governs these plans.

Plaintiffs allege that the defendant pharmacy benefit managers contracted on behalf of health plans and insurers with Mylan to purchase EpiPen epinephrine injectors. As part of their contracting, plaintiffs assert that defendants violated ERISA by engaging in extortion and deceptive conduct that unlawfully extracted ever-larger portions of rebates and other payments from Mylan. Based on this theory, plaintiffs seek to recover hundreds of millions of dollars allegedly paid to defendants through the "creation, maintenance, and concealment of a multi-tiered fraudulent scheme designed to deceive consumers through the marketing and sale of the

---

[1] Because the court is transferring this action to the District of Minnesota, it does not decide plaintiffs' pending Motion for Leave to File an Amended Complaint (Doc. 48). *See*, *e.g.*, *Chet Baker Enters., LLC v. Fantasy, Inc.*, 257 F. Supp. 2d 592, 593 (S.D.N.Y. 2002) (after concluding that transfer was warranted, the court declined to decide plaintiffs' pending motion to amend because "[t]he transferee court, which will ultimately preside over the case, should decide if plaintiffs may file a second amended complaint"); *Desouza v. Blender*, No. 93-6706, 1994 WL 105536, at *1 n.2 (E.D. Pa. Mar. 28, 1994) (same).

EpiPen epinephrine injector." Doc. 1 ¶ 1.  Plaintiffs seek to represent a proposed class they define as:

> **The ERISA Class.**  All individuals residing in the United States and its territories who are or were enrolled in an ERISA-covered health benefit plan or health insurance plan for which one or more of the PBM Defendants administers or manages pharmacy benefits, who purchased an EpiPen epinephrine injector pursuant to such plans or policies and were required to pay all or a portion of the purchase price based on an inflated list price (the "ERISA Class").
>
> Excluded from the Class are:  (a) the named Defendants and any entity in which they have a controlling interest, and their legal representatives, officers, directors, assignees, and successors and (b) any co-conspirators, and their officers, directors, management, employees, subsidiaries, and affiliates.

*Id.* ¶ 138.

Plaintiffs' Complaint asserts four causes of action:  (1) violating ERISA § 406(b) (29 U.S.C. § 1106(b)) by engaging in prohibited transactions between a plan and a fiduciary; (2) violating ERISA § 404 (29 U.S.C. § 1104) by breaching fiduciary duties of loyalty and prudence; (3) violating ERISA § 702 (29 U.S.C. § 1182) by discriminating against plan participants and beneficiaries who have a medical condition that requires an EpiPen because defendants' alleged use of artificially inflated prices and undisclosed and excessive PBM Kickbacks have required them to pay greater premiums and contributions for their health plan benefits than those participants and beneficiaries who do not require an EpiPen; and (4) violating ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)) by knowingly participating in ERISA violations.

Almost three months before plaintiffs filed this action, Elan and Adam Klein and two other plaintiffs ("the *Klein* plaintiffs"), individually and on behalf of all others similarly situated, filed a similar, but not identical Class Action Complaint in the District of Minnesota.  *Klein v. Prime Therapeutics, LLC*, No. 17-1884-PAM-SER (D. Minn. June 2, 2017), ECF 1.  The original *Klein* Complaint named four defendants who own or operate pharmacy benefit

management companies.[2] On September 27, 2017, the *Klein* plaintiffs filed an Amended Complaint, adding four more defendants.[3] *Klein*, ECF 107.

The *Klein* Complaint asserts that the defendant pharmacy benefit managers violated their fiduciary duties under ERISA by subjecting plan participants and beneficiaries to highly inflated prices for the EpiPen. The *Klein* plaintiffs contend that defendants negotiated for Mylan to pay increasingly large rebates to defendants and their clients, thus driving up the price of the EpiPen. But instead of passing the rebates on to plan participants in the form of lower or stable prices, defendants allegedly kept the savings from the rebates. This produced, the *Klein* plaintiffs assert, massive revenue increases for defendants and massive price increases for plan participants.

The *Klein* plaintiffs assert four ERISA-based causes of action. They claim defendants: (1) violated ERISA § 404(a)(1)(A) (29 U.S.C. § 1104(a)) by breaching fiduciary duties owed to class members; (2) violated ERISA § 406(b)(2) (29 U.S.C. § 1106(b)(2)) by engaging in prohibited transactions between a plan and a fiduciary; (3) violated ERISA § 405(a) (29 U.S.C. § 1105(a)) by knowingly participating in, and enabling breaches of fiduciary duties; and (4) violated ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)) for knowingly participating in ERISA violations.

The *Klein* plaintiffs seek to represent a proposed class they define as:

> All persons residing in the United States and its territories who are or were participants in, or beneficiaries of, health insurance plans governed by ERISA, for which Defendants administered pharmacy benefits, and who paid any portion of the purchase price for EpiPen, EpiPen Jr., EpiPen 2-Pak, or EpiPen Jr. 2-Pak calculated by reference to a benchmark price, including but not limited to WAC (Wholesale Acquisition Cost) or AWP (Average Wholesale Price), as required by the terms of their health insurance and/or prescription drug benefit plans. The

---

[2]   The four defendants are: (1) Prime Therapeutics, LLC; (2) Express Scripts Holding Company; (3) Express Scripts, Inc.; and (4) CVS Health Corp.

[3]   The four defendants added by *Klein*'s Amended Complaint are: (1) Medco Health Solutions, Inc.; (2) Caremark PCS Health, LLC; (3) Caremark, LLC; and (4) Caremark Rx, LLC.

>  class begins on June 2, 2011 and continues through the present. Excluded from the class are governmental entities; Defendants; any parent, subsidiary, or affiliate of Defendants; Defendants' officers, directors, and employees; and the immediate family members of Defendants' officers, directors, and employees.

*Klein*, ECF 107 ¶ 154.

The Moving Defendants contend that the *Klein* plaintiffs assert the same ERISA claims against substantially the same defendants on behalf of a nearly identical putative class. So, the Moving Defendants argue, the court should transfer this case to the District of Minnesota where the first-filed action—*i.e.*, the *Klein* lawsuit—is pending. The court explains why it has decided to grant the Moving Defendants' request, below.

## II. Analysis

The Moving Defendants ask the court to transfer this case to the District of Minnesota under the first-to-file rule. Alternatively, the Moving Defendants ask the court to transfer the case under 28 U.S.C. § 1404(a). The court finds that transfer is warranted for both reasons. It addresses each reason, in turn, below.

### A. The First to File Rule

The first-to-file rule posits that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (citing *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961)). When determining whether to apply the first-to-file rule, the court should examine: (1) "the chronology of the actions," (2) "the similarity of the parties involved," and (3) "the similarity of the issues at stake." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010).

Here the Moving Defendants assert that all three factors support transfer to Minnesota. *First*, the *Klein* plaintiffs filed their Class Action Complaint on June 2, 2017. Plaintiffs filed their Complaint in this case more than two months later, on August 29, 2017. Doc. 1. So, the *Klein* case came first.

In plaintiffs' Opposition to the Motion to Transfer, plaintiffs dispute that *Klein* is the first-filed case. Doc. 49 at 1–5. Instead, plaintiffs contend that *Klein* is just one of several lawsuits that assert claims based on Mylan's marketing and sale of the EpiPen. With this argument, plaintiffs contend that this case—as well as the *Klein* action—belongs in an MDL that the Judicial Panel on Multidistrict Litigation ("JMPL") has transferred to our court. *See In Re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, MDL No. 2785. But on December 5, 2017, the JPML declined to transfer *Klein* to the MDL because, it concluded, transfer would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation.

In reaching this conclusion, the JPML recognized that some factual overlap exists between the *Klein* case and the cases pending in the MDL because the cases arise from recent price increases for the EpiPen. But, the JPML found that *Klein* is different in all other respects because, unlike the cases in the MDL, it asserts ERISA claims against pharmacy benefit manager defendants. Recognizing that *Klein* and the MDL cases involve different defendants, different claims and theories of liability, different putative classes, and different forms of relief, the JPML concluded that consolation of *Klein* in the MDL was not warranted.

The JPML's conclusions about *Klein* have nullified plaintiffs' argument about the chronology of *Klein* and *Brannon*. The MDL cases filed before *Klein* are sufficiently dissimilar from *Klein* that the court does not consider them when assessing the actions' sequence. Instead,

6

on this record, the court concludes that *Klein* was the first case filed by plan participants who assert ERISA claims against pharmacy benefit managers for extracting large rebates from Mylan and subjecting plan participants and beneficiaries to highly inflated prices for the EpiPen.

*Second*, the parties are substantially similar in both cases. The *Klein* Complaint and the Complaint in this case name three of the same PBM defendants. Also, the putative plaintiff classes in each case are quite similar. They both seek relief on behalf of a putative nationwide class of members of various health plans to which the defendant PBMs provide services. As the Moving Defendants assert, the two class definitions overlap for thousands of putative class members. The court thus concludes that the parties in this case and *Klein* are substantially similar.

*Third*, the issues in the two cases are substantially similar. Both actions involve ERISA claims—one claim for breach of fiduciary duty, one claim for engaging in prohibited transactions, and one claim for "knowing participation" in ERISA violations. Although the Complaint in this case asserts a discrimination claim that *Klein* does not assert, this slight difference does not counterbalance the similarities. "[T]he first-to-file rule does not require identity of claims, since there need be only substantial overlap for the actions to be duplicative and to thus implicate the first-to-file rule." *XTO Energy*, 679 F. Supp. 2d at 1298. Here, the issues raised by the asserted claims in both cases are substantially similar.

*Finally*, the Moving Defendants assert that no special circumstances counsel against applying the first-to-file rule. Our court has recognized that "[c]ircumstances in which a party exhibits bad faith, anticipatory filing, and forum shopping permit the court's departure from the first-to-file rule." *Nacogdoches Oil & Gas, LLC v. Leading Sols., Inc.*, No. 06-2551-CM, 2007 WL 2402723, at *2 (D. Kan. Aug. 17, 2007) (citation omitted). Plaintiffs provide no evidence of

bad faith, anticipatory filing, or forum shopping to preclude applying the first-to-file rule here. The court is not aware of any such evidence.

After considering all the relevant factors, the court determines that transfer of this case to the District of Minnesota is warranted under the first-to-file rule.

### B. Transfer Under 28 U.S.C. § 1404(a)

The Moving Defendants also assert that transfer is warranted under 28 U.S.C. § 1404(a). The statute provides: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The district court has broad discretion under § 1404(a) to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515 (citations omitted). "'Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue.'" *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

The Tenth Circuit has specified the factors that a district court should consider when deciding whether to transfer an action under 28 U.S.C. § 1404(a). They are:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *see also Bartile Roofs, Inc.*, 618 F.3d at 1167 (citations omitted).

The Moving Defendants assert that the court should transfer this case to Minnesota because (1) plaintiffs could have brought the action originally in Minnesota; (2) transfer would conserve judicial resources by consolidating related litigation in one court; and (3) transfer would serve the convenience of the parties and witnesses when two of the named defendants are based in Minnesota and defendants already are litigating the *Klein* case in Minnesota. The court agrees that these reasons favor transferring the case to Minnesota.

In their Opposition to the Motion to Transfer, plaintiffs argue that transfer is not warranted because MDL No. 2785 is pending in this District. Plaintiffs thus assert that judicial economy favors litigating the case in Kansas. But, as already explained, the JPML has determined that *Klein* differs significantly from the cases in the MDL and has refused to transfer the *Klein* case to the MDL. The JPML's decision thus undermines all of plaintiffs' arguments against transfer of this case to Minnesota.

The Moving Defendants also assert that plaintiffs' choice of forum is entitled to no deference here because (1) none of the named plaintiffs in the pending Complaint are Kansas residents; (2) the Complaint alleges no connection to Kansas; and (3) plaintiffs' chosen forum is diminished when they purport to bring the action on behalf of a nationwide class. Pertinent to the third reason, our court recognizes that when a plaintiff brings an action as a class representative, "the weight normally given to his choice of forum is diminished." *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1263 (D. Kan. 2004). Here, plaintiffs brought this lawsuit hoping to represent a nationwide class. The court thus gives little weight to their choice of forum.

After considering the factors for determining whether to transfer an action under 28 U.S.C. § 1404, the court, in its discretion, concludes that a preponderance of the factors also favor transfer under this provision. While the analysis under § 1404 is not as one-sided as it is under the first-to-file rule, the court finds that transfer will serve the convenience of the parties and witnesses and promote the interest of justice. The court thus transfers this action to the District of Minnesota.

### III.   Conclusion

For reasons explained, the court grants the Moving Defendants' Motion to Transfer Venue. The court transfers this case to the District of Minnesota.

**IT IS THEREFORE ORDERED THAT** defendants Prime Therapeutics, LLC, Express Scripts Holding Company, and Express Scripts, Inc.'s Motion to Transfer Venue (Doc. 38) is granted. The court transfers this case to the United States District Court for the District of Minnesota. The court directs the Clerk of the Court to take all necessary steps to effectuate this transfer.

**IT IS SO ORDERED.**

**Dated this 2nd day of January, 2018, at Topeka, Kansas.**

                                                     **s/ Daniel D. Crabtree**
                                                    **Daniel D. Crabtree**
                                                    **United States District Judge**